# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. LUIS GARCIA-GONZALEZ, Defendant. | Case No. 15-cr-00109-BLF-1 <br><br> **ORDER DENYING MOTION TO DISMISS THE INDICTMENT** <br><br> [Re: ECF 27] |

Before the Court is Defendant Luis Garcia-Gonzalez's motion to dismiss the indictment for illegal reentry after deportation in violation of 8 U.S.C. § 1326. Mot., ECF 27. Defendant contends that the immigration judge who issued his previous removal order did not have jurisdiction to issue such an order because the Notice to Appear for his removal proceedings was invalid. *See generally* Mot. For the following reasons, the Court holds that the immigration court had jurisdiction to issue the original removal order, and thus Defendant's motion to dismiss is DENIED.[1]

## I. BACKGROUND

In February 2005, Defendant received a Notice to Appear in front of an immigration judge for removal proceedings. Not. to Appear ("NOA"), Ex. 2, Mot., ECF 27-1.[2] The Notice listed the date and time of the proceedings as "a date to be set" and "a time to be set," respectively. *Id.* In

---

[1] On January 28, 2019, the same day this Court issued the present Order, the Ninth Circuit held in *Karingithi v. Whitaker*, No. 16-70885 (Jan. 28, 2019 9th Cir.) that an immigration court has jurisdiction under 8 C.F.R. § 1003.13–15 even when a notice to appear fails to state the time and place of the removal proceedings. This Order is fully consistent with that opinion.

[2] Pursuant to Federal Rule of Evidence 201, the Court is permitted to take judicial notice of adjudicative facts "not subject to reasonable dispute," and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

March 2005, after the removal proceedings, Defendant was removed from the United States to Mexico. *See* Indict., ECF 2; Ex. 1, Mot., ECF 27-1. The removal was reinstated in September 2007 and April 2011. *See* Exs. 3 & 4, Mot., ECF 27-1. The Indictment in this case was filed on February 18, 2015, charging Defendant with a violation of 8 U.S.C. § 1326 for illegal reentry after deportation. *See* Indict. Defendant filed the instant motion to dismiss the indictment on December 20, 2018, and the Court held a hearing on January 8, 2019.

## II. LEGAL STANDARD

The Federal Rules of Criminal Procedure state that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R.Crim. P. 12(b)(1). Rule 12(b)(3) pertains to alleged defects in the indictment and permits a motion to dismiss for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(v).

## III. DISCUSSION

The Court first describes the relevant statutory and regulatory framework governing notices of appearance, removal proceedings, and the immigration court's jurisdiction, as well as the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and then turns to Defendant's arguments.

### A. Relevant Statutory and Regulatory Framework and *Pereira*

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, provides the statutory framework for the initiation of removal proceedings. The INA confers upon the Attorney General the authority to define, by regulation, the jurisdiction of the immigration courts. *Id.* § 1103(g)(2) ("The Attorney General shall establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section."). Pursuant to this authority, the Attorney General promulgated regulations governing the "jurisdiction and commencement of proceedings" in the immigration court. 8 C.F.R. § 1003.14. Under those regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." *Id.* A "charging document" includes "a Notice to Appear" and several other documents not relevant here. *Id.* § 1003.13. Elsewhere, the regulations describe the "[c]ontents of the Notice to Appear for removal proceedings." *Id.* § 1003.15(b)–(c).

This section enumerates the information that the Government "shall provide . . . to the Immigration Court" in the Notice to Appear. *Id.* Importantly, this information does not include the time and place of the proceedings before the court. Though, in another section, the regulations state that "the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." *Id.* § 1003.18. "Failure to provide any of [this information]" to the immigration court does not "afford[] the alien any substantive or procedural rights." *Id.*

The INA itself also defines a Notice to Appear. Section 1229(a) of the INA provides that "[i]n removal proceedings under Section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . ." 8 U.S.C. § 1229(a). Like the regulations, the statute enumerates what information must be included in a Notice to Appear. But unlike the regulatory definition, the statutory Notice to Appear must include "the time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i).

The Supreme Court recently considered and interpreted Section 1229(a)'s requirements for a Notice to Appear in *Pereira*, 138 S. Ct. 2105. In *Pereira*, the Government had served the noncitizen[3] with a notice to appear that did not specify the time and place of the removal proceedings, as required by Section 1229(a). *Id.* at 2109. The question before the Court was whether the notice to appear triggered what is known as the "stop-time rule." Under the INA, nonpermanent residents who have been in the United States continuously for 10 years may receive discretionary relief in removal proceedings. 8 U.S.C. § 1229(b)(1). However, the stop-time rule mandates that any period of continuous presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A). Pereira argued that the stop-time rule had not been triggered because his notice to appear did not comply with the definition set forth in Section 1229(a) because it did not include the date and time of his proceedings.

The Court agreed, holding that "when the term 'notice to appear' is used elsewhere in the statutory section . . . it carries with it the substantive time-and-place criteria required by

---

[3] Like the Court in *Pereira*, this Court uses the term "noncitizen" throughout this opinion to refer to any person who is not a citizen or national of the United States. 138 S. Ct. at 2110 n.1 (citing 8 U.S.C. § 1101(a)(3)).

3

§ 1229(a)." *Pereira*, 138 S. Ct. at 2116. The Court held that the stop-time statute clearly and unambiguously required that the notice to appear conform with the requirements of Section 1229(a) because it "expressly referenc[ed] § 1229(a)." *Id.* at 2114 (quoting 8 U.S.C. § 1229b(d)(1)). The Court also looked to other provisions of Section 1229 in interpreting the requirements under Section 1229(a) by referencing the well-established rule that "identical words used in different parts of the same act are intended to have the same meaning." *Id.* at 2114–15 (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 571 (2012)). Finally, the Court noted that "common sense" dictated the result because "[c]onveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Id.* at 2115. Importantly, in rejecting the Government's argument that the notice to appear serves primarily as a charging document, the Court recognized that a notice to appear need not "have only one essential function." *Id.* at 2115 n.7. In the context of the stop-time rule, the function of the notice to appear was to "tell[] a noncitizen when and where to appear," which required more information than just the charges against the noncitizen. *Id.*

### B. Application of the Law

Defendant's argument proceeds as follows: (1) his Notice to Appear was invalid because it did not include the time and place of his removal proceedings, as required by 8 U.S.C. § 1229(a) and *Pereira*; (2) because his Notice was invalid, it could not serve as the "charging document," as defined by 8 C.F.R. § 1003.13, necessary to vest the immigration judge with jurisdiction under 8 C.F.R. § 1003.14; (3) because the immigration judge did not have jurisdiction to issue the removal order, Defendant's initial removal was invalid; (4) because the initial removal (and subsequent removals dependent on it) is invalid, the current charge for illegal reentry cannot stand. *See generally* Mot.

The Court recognizes that courts are divided on the question of whether, after *Pereira*, a notice to appear that complies with the regulatory requirements of 8 C.F.R. § 1003.14 but not with the statutory requirements of 8 U.S.C. § 1229(a) can vest jurisdiction in the immigration court for removal proceedings. *Compare, e.g.*, *United States v. Collins-Avila*, No. CR-18-00102-PHX-JJT

4

1 (D. Ariz. Sep. 25, 2018) (jurisdiction vests); *United States v. Ramirez*, No. 3:18-CR-00026, 2018 WL 6037540, at *4 (W.D. Va. Nov. 16, 2018) (same); *United States v. Romero-Colindres*, No. 1:18-cr-00415, 2018 WL 5084877, at *2 (N.D. Ohio Oct. 18, 2018), *appeal filed* No. 18-4121 (6th Cir.) (same), *with United States v. Ramos-Urias*, No. 18-CR-00076-JSW-1, 2019 WL 289835, at *4 (N.D. Cal. Jan. 23, 2019) (no jurisdiction); *United States v. Arteaga-Centeno,* No. 18-CR-00332-CRB-1, 2019 WL 134571, at *2 (N.D. Cal. Jan. 8, 2019), *appeal filed*, No. 19-10010 (9th Cir.) (same); *United States v. Quijada-Gomez*, No. 2:18-cr-00110-SAB (Dec. 12, 2018 E.D. Wash.) (same).

The Court has considered the statutory and regulatory framework, the relevant case law, and the briefing in this matter and concludes that a notice to appear that does not include time and place information can vest an immigration judge with jurisdiction over removal proceedings.

As it must, the Court looks to the statute's mandates regarding the jurisdiction of the immigration courts. The INA grants the Attorney General full authority to define the jurisdiction of the immigration courts. 8 U.S.C. § 1103(g)(2). It does not otherwise dictate how such jurisdiction can vest. Using that authority, the Attorney General determined that jurisdiction vests when a notice to appear is filed, 8 C.F.R. § 1003.13, the contents of which are set forth in the same regulations, *id.* § 1003.15(b)–(c). Though the regulations use the term "notice to appear," as in INA § 1229(a), the regulations do not refer to Section 1229 or its requirements. Instead, they set forth their own requirements for the notice to appear, which do not include the need for the time and place of the removal proceedings. 8 C.F.R. § 1003.15(b)–(c); *see also id.* § 1003.18 ("In removal proceedings . . . the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, *where practicable*." (emphasis added)). The Attorney General thus determined that the notice to appear does not require time and place information to vest jurisdiction in the immigration courts. This decision was well within his exclusive authority to promulgate regulations governing the jurisdiction of the immigration courts and thus warrants substantial deference from this Court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

*Pereira* does not dictate a different result. *See* Opp. at 8 (listing cases that have held that

*Pereira* does not control the inquiry here). The *Pereira* Court analyzed the stop-time statute's language, the context of the stop-time rule, and the function of the notice to appear to determine that a notice to appear must contain time and place information to trigger the stop-time rule. This analysis differs significantly for the question of jurisdiction of the immigration court.

The *Pereira* Court emphasized repeatedly that the stop-time provision "expressly referenc[es] § 1229(a)" and is contained in the same act, warranting the interpretive canon that "identical words used in different parts of the same act are intended to have the same meaning." *Id.* at 2114–15 (quoting *Taniguchi*, 566 U.S. at 571). Indeed, the holding was expressly limited to "when the term 'notice to appear' is used elsewhere *in this statutory section*." *Id.* at 2116. Here, the regulations do not expressly reference or otherwise incorporate Section 1229(a)'s definition. *See Romero-Colindres*, 2018 WL 5084877, at *2. Even Section 1229 contemplates that the term "notice to appear" is used as shorthand "in this section." Likewise, the regulations were not drafted by Congress in a separate provision of the same act. Instead, the regulations were drafted by the Attorney General. Of course, without evidence to the contrary, the Attorney General's use of the same term in the regulations would imply that the definitions should be identical. But this default rule of statutory interpretation yields where context makes clear that the terms are not meant to be identical. *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 575–76 (2007). Here, the Attorney General clearly did *not* intend the regulatory notice to be identical to the statutory notice. Most obviously, the two notices are defined to include different content. *Compare* 8 U.S.C. § 1229(a) *with* 8 C.F.R. § 1003.15(b)–(c). Indeed, the Attorney General contemplates that the time and place of proceedings need only be included "where practicable." 8 C.F.R. § 1003.18. Moreover, as discussed below, the two notices serve entirely different functions. Thus, unlike in *Pereira*, where the stop-time provision necessarily used "notice to appear" as defined by Section 1229(a), the regulations here do not use that same definition.

Several courts have held that this difference in language renders the regulation's definition in conflict with the clear and unambiguous language of the statute, in which case the statute controls. *See, e.g.*, *Arteaga-Centeno*, 2019 WL 134571, at *3; *Rivera Lopez*, 2018 WL 6834363, at *6. But these differing definitions do not actually conflict because the two notices serve

6

different purposes—a key motivating factor in *Pereira*. As set forth in *Pereira*, the statutory notice to appear serves to notify the noncitizen of the removal proceedings, including the time and place of those proceedings. *See Pereira*, 138 S. Ct. at 2115 ("Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings."). Indeed, Section 1229(a) dictates that "notice (in this section referred to as a 'notice to appear') shall be given in person *to the alien*." 8 U.S.C. § 1229(a) (emphasis added). That is why in rejecting the Government's argument that a notice to appear is merely a charging document, the Court held that the notice to appear need not "have only one essential function." *Pereira*, 138 S. Ct. at 2115 n.7. Instead, it can serve multiple functions. To serve the function of notifying the noncitizen, the statutory notice criteria were required.

The regulatory notice to appear serves an entirely different function. The function of the regulatory notice to appear is to vest jurisdiction in the immigration court, not to notify the noncitizen. The regulatory notice to appear is referred to as a "charging document" that vests jurisdiction and commences removal proceedings. 8 C.F.R. § 1003.13–14. And the contents of the regulatory notice to appear are described in terms of the administrative information "the Service shall provide . . . *to the Immigration Court*," not to the noncitizen. *Id.* § 1003.15(c) (emphasis added). Given this intended function, the Attorney General has full authority under the INA to define what information the notice must include. Nothing in *Pereira* stands for the contrary. Were the Government to claim instead that the regulatory notice sufficiently functions to notify the noncitizen for other statutory purposes, the Court would have to disagree—indeed, that is exactly what the Court rejected in *Pereira*. *See* 138 S. Ct. at 2111–12 (Government served on noncitizen notice to appear pursuant to 8 C.F.R. § 1003.18 without time and place information).

Two final arguments weigh in favor of holding that *Pereira* does not control here. *See* Opp. at 9–10. First, as recognized in *Pereira,* "almost 100 percent" of "notices to appear omit the time and date of the proceeding over the last three years." 138 S. Ct. at 2111. Tens of thousands of removal proceedings have occurred in this time. Opp. at 10 n.1, ECF 28. If these notices did

not confer jurisdiction on those courts, each and every one of those proceedings (no matter the result) is void for lack of jurisdiction. If the Supreme Court meant for its opinion to have such a drastic result, it surely would have said so. Second, the Supreme Court made no mention of jurisdiction in its opinion. Jurisdiction is a threshold issue that courts are required to consider even when the issue is not raised. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900)). Not only did the Supreme Court not consider the jurisdiction of the immigration court, but also it remanded the case for further proceedings. *See Pereira*, 138 S. Ct. at 2120. If the immigration court were without jurisdiction, further proceedings would seemingly not be necessary. Though this final argument is of limited persuasive value, it still serves to confirm that *Pereira* does not dictate the result here.

The Court recognizes that in practice the statutory notice to appear and regulatory notice to appear may often be the same document, and that the regulations can be read as contemplating that the documents will be one and the same. *See Quijada-Gomez*, No. 2:18-cr-00110-SAB, at 6–7 (Dec. 12, 2018 E.D. Wash.) ("In practice, and by regulation, there are not two classes of Notices to Appear."). But practical reality is not legal reality. Because the Attorney General has the authority to prescribe the jurisdictional requirements for immigration courts, it was well within his authority to determine that a notice to appear need not meet the statutory requirements in order to vest such jurisdiction. Ostensibly, the Attorney General could have chosen *any* reasonable means for vesting jurisdiction. That he chose to require a notice to appear does not alone indicate that he intended to circumscribe his own authority by (silently) incorporating the statutory requirements into his definition. Indeed, given the strong evidence to the contrary, such an interpretation of the regulations is unwarranted. *Cf. Duke Energy Corp.*, 549 U.S. at 575–76 (2007) ("There is, then, no effectively irrebuttable presumption that the same defined term in different provisions of the same statute must be interpreted identically. Context counts." (citation omitted)).

The Court thus holds that an immigration court has jurisdiction if the notice to appear complies with the regulatory requirements, even if it does not comply with the statutory requirements of Section 1229(a). Because Defendant's Notice to Appear conformed with the

regulatory requirements, the immigration court had jurisdiction to remove him.[4]

## IV. ORDER

For the foregoing reasons, Defendant's motion to dismiss the indictment is DENIED.

**IT IS SO ORDERED.**

Dated: January 28, 2019

BETH LABSON FREEMAN
United States District Judge

---

[4] Though Defendant does not assert a Due Process claim, the Court notes that Defendant appeared at and participated in his removal hearing. Norris Decl. ISO Opp. at 2 & Ex. 1, ECF 29, 29-1.